1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GRZESLO,<br><br>               Plaintiff,<br><br>     v.<br><br>RAYTHEL FISHER, JR., et al.,<br><br>             Defendants. | Case No. 1:21-cv-01371-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S SECOND AMENDED COMPLAINT BE DISMISSED, WITH LEAVE TO AMEND SOLELY PLAINTIFF'S FREE EXERCISE CLAIM<br><br>(ECF No. 25)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiff James Grzeslo is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (ECF Nos. 1, 5, 16, 25). Plaintiff filed the complaint commencing this action on September 14, 2021, raising Eighth Amendment, ADA, due-process, and retaliation claims. (ECF No. 1).

On October 18, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 10). The Court gave Plaintiff thirty days to either file a first amended complaint or notify the Court in writing that he wanted to stand on his complaint." (*Id.* at 16).

On November 12, 2021, Plaintiff filed his first amended complaint, raising Eighth Amendment, ADA, and due-process claims. (ECF No. 16). On December 2, 2021, the Court

1

1  screened Plaintiff's first amended complaint and found that it failed to state any cognizable
2  claims. (ECF No. 19). The Court gave Plaintiff thirty days to either file a second amended
3  complaint or notify the Court in writing that he wanted to stand on his complaint." (*Id.* at 14).

4      After receiving an extension of time, Plaintiff filed a second amended complaint on
5  January 18, 2022. (ECF No. 25). The Court has reviewed Plaintiff's second amended complaint
6  and will recommend that all claims be dismissed for failure to state a claim, and that leave to
7  amend be granted only as to Plaintiff's First Amendment claim against Defendant Suazo based
8  on his free exercise of religion claim.

9      Plaintiff has twenty-one days from the date of service of these findings and
10 recommendations to file his objections.

11      **I.      SCREENING REQUIREMENT**

12      The Court is required to screen complaints brought by prisoners seeking relief against a
13 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).
14 The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are
15 legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or
16 that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.
17 § 1915A(b)(1), (2).

18      As Plaintiff is proceeding *in forma pauperis*, the Court also screens the complaint under
19 28 U.S.C. § 1915. (ECF No. 5). "Notwithstanding any filing fee, or any portion thereof, that
20 may have been paid, the court shall dismiss the case at any time if the court determines that the
21 action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C.
22 § 1915(e)(2)(B)(ii).

23      A complaint is required to contain "a short and plain statement of the claim showing
24 that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not
25 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
26 conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*
27 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient
28 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.      SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff lists three claims in his complaint[1]: (1) Defendants violated his First, Eighth, and Fourteenth Amendment rights; (2) Defendants violated the ADA, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, and a prison regulation, Cal. Code Regs. Tit. 15, § 3040(a); and (3) Defendants obstructed justice pursuant to § 3C1.1 of the United States Sentencing Guidelines. (ECF No. 25, pp. at 13-14). Plaintiff names the following eight Defendants: (1) Secretary of CDCR Kathleen Allison; (2) former Warden Raythel Fisher, Jr.; (3) Automotive Instructor Ernest Castillo; (4) Associate Warden/ADA Director Designee B. Davi; (5)  Correctional Counselor M. Navarrette; (6) former Program Sergeant B. Bean; (7) Program Sergeant Santoya; and (8) Correctional Officer B. Suazo. (ECF No. 25, p. 9, 13-15). Plaintiff identifies Valley State Prison as the location of the incidents giving rise to his claims. (*Id.* at 5).

As part of a general recitation of facts, Plaintiff states that he is "a paraplegic, totally disabled, wheelchair bound prisoner" with "a history of seizure activity."[2] (*Id.*). From April 2, 2021, through November 12, 2021, the Defendants, "all or in part," exposed him to "asbestos residue and dust from brake lines and brake parts." (*Id.* at 6). Plaintiff was exposed to other hazards including carcinogens, caustic substances, and acids. (*Id.*). The tire alignment machine

[1] Within each claim, Plaintiff lists the legal authorities he believes were violated but does not articulate how any Defendant violated his rights beyond generally referring to his recitation of facts.

[2] For readability, minor alterations, such as altering capitalization and punctuation, have been made to quoted portions of Plaintiff's complaint without specifically indicating the changes.

also contains dozens of blinking red lights which can cause of seizures. (*Id.* at 5). The work environment was "wheelchair inaccessible" and Plaintiff was otherwise unqualified for the work. (*Id.* at 6, 8). There was "no actual ADA toileting facility." (*Id.* at 6). Plaintiff has since been relocated to the automotive classroom but had to frequently enter the automotive shop "in order to utilize the pseudo-ADA toilet." (*Id.* at 7). The soap dispenser and hand wipes are out of reach to him while he is in his wheelchair. (*Id.*). Plaintiff alleges that "a common plan of conspiracy exists since each [Defendant] knew of or were advised of Plaintiff's medical conditions and non-qualifications." (*Id.* at 8).

For each Defendant, Plaintiff briefly states facts about their alleged misconduct: (1) Allison obstructed justice by denying him access to the courts in violation of prison policies by charging "indigent inmates for copying legal work." Plaintiff is "now limited to 10 copies per week, if shortened deadline exists"; (2) Fisher relegates and delegates authority; (3) Castillo refused to have him reassigned to a different work assignment, exposed him to environmental hazards, and filed "falsified job assignments"; (4) Davi repeatedly wrote and submitted falsified reports "to include execution of two written reasonable accommodation reports (RAP)" and sent custody officers to harass Plaintiff and to force him to sign legal documents affiliated with this case; (5) Navarrette forced Plaintiff to sign falsified legal documents; (6) Bean falsely ordered Plaintiff not to return to work in the automotive shop, which order resulted in Plaintiff receiving disciplinary action; (7) Santoya wrote a falsified rules violation report and also endangered the Plaintiff's health by failing to adhere to COVID immunization protocol/mandate and continuing to work in the prison around a time that Plaintiff indicates Santoya was positive with COVID; and (8) Suazo falsified cell inspection documentation and "intentionally threw away Plaintiff's Jewish prayer." (*Id.* at 9-12).

### III.   ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

4

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

///

5

**B.  Conditions of Confinement - Eighth Amendment**

In his first claim, Plaintiff cites the Eighth Amendment as being violated. Liberally construed, his allegations about his prison work assignment, being denied an "actual ADA toileting facility," and being put at risk of contracting COVID implicate claims of unconstitutional conditions of confinement.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "In prohibiting cruel and unusual punishment, the Eighth Amendment imposes a duty on prison officials to 'provide humane conditions of confinement . . . and [to] take reasonable measures to guarantee the safety of the inmates.'" *Denney v. Redwood City*, No. C 95-2148 CAL, 1995 WL 494592, at *1 (N.D. Cal. Aug. 7, 1995) (quoting *Farmer*, 511 U.S. at 832). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981). Notably, some courts have concluded that the danger of contracting COVID in prison can give rise to an Eighth Amendment violation in certain circumstances. *See, e.g., Torres v. Milusnic*, 472 F. Supp. 3d 713, 727 (C.D. Cal. 2020), *enforcement granted in part, denied in part*, No. CV204450CBMPVCX, 2021 WL 3829699 (C.D. Cal. Aug. 27, 2021) (addressing Eighth Amendment claim regarding COVID dangers at prison in application brought under 28 U.S.C. § 2241).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal

6

quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions-of-confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted).

"A prisoner's labor can constitute a condition of confinement, where the prisoner has no choice but to work in some capacity within the prison." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to 'perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain.'" *Id.* at 1045 (quoting *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam) (alterations in original).

Moreover, this Court bears in mind the Supreme Court's instruction that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources" and thus courts should "accord deference to the appropriate prison authorities" who are tasked with "prison administration." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Relying on such guidance, the Ninth Circuit has afforded deference to prison authorities in the context of prison job assignments. *Gates v. Rowland*, 39 F.3d 1439, 1448 (9th Cir. 1994) ("Under the standard of review announced in *Turner*, deference is due to the prison authorities' policy not to open food service jobs to HIV-infected inmates."); *see Leon v. Vasquez*, No. 1:11-CV-00601-LJO, 2011 WL 4353124, at *2 (E.D. Cal. Sept. 16, 2011) ("[P]articular job assignments of prisoners are matters of prison administration in which federal courts should not interfere.").

In addition, the Ninth Circuit has concluded that the denial of the ability to use a toilet to urinate can rise to a constitutional violation. *See Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) ("Moreover, although we have no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment, the plaintiffs in this case testify that the state imposed conditions inescapably resulting in prisoners wetting each other with urine. This evidence, if believed, would allow a fact-finder to conclude that the plaintiffs suffered a sufficiently serious deprivation to violate the Eighth Amendment.").

7

Here, it appears that Plaintiff is challenging his work assignment on the ground that it is (or was) improper given his limitations, but he does not allege that he was forced to do any particular task that he was physically incapable of performing.[3] As the Court has twice explained to Plaintiff in its previous screening orders, to give rise to a constitutional violation, a prisoner must "allege[] that a prison official compelled him to 'perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain.'" *Morgan*, 465 F.3d at 1045. As with his two previous complaints, Plaintiff does not describe what, if any, physical labor he is being forced to perform.

While Plaintiff states that Defendant Castillo falsified his job assignments, he does not describe what, if anything, he does in his job assignment. (ECF No. 25, p. 10). Without knowing what work (if any) Plaintiff performs, there is nothing to suggest that Plaintiff's job placement requires him to perform labor beyond his strength or that causes him undue pain. *See Tivis v. Huffman*, No. 10-cv-00638-PAB-KMT, 2010 WL 5464740, at *6 (D. Colo. Dec. 9, 2010), *report and recommendation adopted in part, rejected in part*, No. 10-CV-00638-PAB, 2010 WL 5463390 (D. Colo. Dec. 28, 2010) ("Plaintiff fails to state a claim for an Eighth Amendment violation because Plaintiff admits he was not forced to perform the allegedly medically inappropriate work. Instead, Plaintiff refused to perform the duties assigned to him, that he was sent back to his unit and locked down for the day, and that when he returned for duty the next day he was told he had been released due to his condition. . . . Plaintiff's Eighth Amendment claim is properly dismissed."); *Lewis v. Marciano*, No. EDCV-17-0181-SVW (SS), 2017 WL 4156984, at *6 (C.D. Cal. Sept. 18, 2017) (concluding that the plaintiff failed to state an Eighth Amendment claim relating to prison job assignment where the plaintiff failed to "allege any facts showing why his limp was so serious that the failure to exempt him from kitchen detail would likely result in significant additional injury or the unnecessary and wanton infliction of pain").

---

[3] Plaintiff indicates that he has since been relocated from the automotive shop to the automotive classroom, although he still has (or had) to enter the automotive shop to use the toilet. (ECF No. 25, p. 7).

Plaintiff also alleges, as he did in his previous two complaints, that his job assignment exposes him to hazards such as carcinogens, caustic substances, and acids. (ECF No. 25, p. 6). He also indicates that he is at risk of seizures from blinking red lights on the tire alignment machine. However, Plaintiff has again failed to specify how he is exposed to such dangers in his work assignment in light of the relevant legal standards, *e.g.*, he does not say that he was required to handle hazardous substances or operate the tire alignment machine. Moreover, Plaintiff does not identify how any Defendant was responsible for subjecting him to such dangers, *e.g.*, by ordering him to interact with hazardous substances.

As to being denied an "actual ADA toileting facility," Plaintiff does not assert that he has been denied the ability to urinate; rather, he indicates that he can "utilize" the toilet, although he states that the soap dispenser and hand wipes are out of his reach. (*Id.* at 6-7). Plaintiff brought similar allegations to being denied an "ADA toilet" in his first amended complaint, with the Court's second screening order finding no cognizable claim but providing Plaintiff with the applicable legal standards under the Eighth Amendment. However, Plaintiff has still failed to provide sufficient factual allegations to state a claim. Specifically, Plaintiff fails to indicate that he is has been denied the ability to cleanse his hands by means other than this one bathroom, *e.g.*, another sink nearby or handwipes accessible to him while he is in his wheelchair. Moreover, he has not connected this allegation to any of the Defendants in the case.

Lastly, Plaintiff generally indicates that Santoya was unvaccinated, contracted COVID, was off work for three months and returned, only to later test positive for COVID a second time, and then go into "isolation" again. (ECF No. 25, p. 12). Plaintiff states that "Santoya had [an] official meeting prior to his second COVID isolation related in-part to this case," but Plaintiff does not state whether this meeting was with him, and if so, whether he came into physical proximity to Santoya, nor does he specify how close the meeting was to the date that Santoya contracted COVID. (*Id.*). Plaintiff also states that Plaintiff had been previously vaccinated and received later "booster injections", and he does not claim to have contracted COVID. (*Id.*).

Given these circumstances, Plaintiff fails to state a claim. Notably, Plaintiff never specifies whether he had any contact with Santoya during a time period that Santoya could have reason to believe he was at risk of exposing Plaintiff to COVID; thus, there is no basis to conclude that Santoya was deliberately indifferent to Plaintiff's health and safety. Instead, Santoya isolated after contracting COVID, and Plaintiff was vaccinated, which circumstances indicate that prison officials took reasonable steps to avoid subjecting Plaintiff to the risk of COVID exposure. *See Torres*, 472 F. Supp. 3d at 728 (noting that prison officials who reasonably respond to dangers posed by COVID would not be liable under the Eighth Amendment).

Accordingly, Plaintiff's complaint fails to state sufficient facts to state a claim under the Eighth Amendment for unconstitutional conditions of confinement.

## C.  Access to Courts - First and Fourteenth Amendments

Within his first claim, Plaintiff alleges violation of his First and Fourteenth Amendment rights, which could liberally be construed to extend to his allegations that he is limited to making ten copies per week by Allison. Plaintiff added this claim for the first time in his second amended complaint despite the Court directing Plaintiff not to add "unrelated claims" in screening Plaintiff's first amended complaint. (ECF No. 19, p. 13). Nevertheless, the Court has reviewed the allegations.

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Phillips v. Hust*, 477 F.3d 1070, 1075 (9th Cir. 2007), *cert. granted, judgment vacated on other grounds,* 555 U.S. 1150 ("Under the First and Fourteenth Amendments to the Constitution, state prisoners have a right of access to the courts."). This right is limited to filing direct criminal appeals, habeas petitions, and civil rights actions. *Id. at* 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Coleman v. Tollefson*, 575 U.S. 532

(2015) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*.").

The provision of an adequate law library or legal assistance is not an end in itself, "but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). Indeed, there is no "abstract, freestanding right to a law library or legal assistance." *Id.* at 351. Therefore, a prisoner's complaint will not survive screening if it simply alleges facts showing "that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.*

To state a viable claim for relief for denial of a right of access to the courts, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. *Allen v. Sakai*, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Harbury*, 536 U.S. at 417. Hence, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–15 (2002)). Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

Here, Plaintiff states that he is "at risk if court documents [are] now limited to 10 copies per week, if shortened deadline exists." (ECF No. 25, p. 9). However, Plaintiff does not allege that he has been unable to meet filing deadlines or to present his claims with the courts or that he was pursuing a non-frivolous claim and suffered actual injury from any denial of access to

the courts. Moreover, while he generally blames Allison for his ten-copies limit, he fails to allege any facts concerning her role in this limit.[4] Accordingly, Plaintiff fails to state a claim for denial of access to the courts.

### D.  Due Process in Connection with False Statements – Fourteenth Amendment

Within his first claim, Plaintiff's reference to the Fourteenth Amendment could liberally be construed to extend to his allegations that: Defendant Castillo falsified documents about Plaintiff's work assignments; Davi falsified RAPs and sent custody officers to harass him to sign legal documents; Navarrette forced him to sign falsified legal documents; Bean falsely told Plaintiff that he did not have to return to his automotive shop assignment, which resulted in Plaintiff receiving a rules violation report; Santoya falsified a rules violation report, and Suazo falsified cell inspection documents. (ECF No. 25, pp. 10-13).

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

"False statements, alone, do not violate a prisoner's constitutional rights," *Alverto v. Henderling*, No. C18-1380 BJR-BAT, 2018 WL 7018718, at *1 (W.D. Wash. Oct. 2, 2018), *report and recommendation adopted*, No. 18-CV-1380-BJR-BAT, 2019 WL 174674 (W.D. Wash. Jan. 11, 2019), nor is the filing of a false rules violation report by a prison official against a prisoner a *per se* violation of the prisoner's constitutional rights, *Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd*, 453 F. App'x 751 (9th Cir. 2011). This is because "a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due

---

[4] The Court notes that Plaintiff has been able to file three complaints totaling fifty-eight pages in this case. Thus, it appears he has been able to effectively litigate this case. Should Plaintiff be unable to meet a deadline in this case in the future due to any limitation on his ability to make copies, he may file a motion requesting an extension of the pertinent deadline or other appropriate relief.

process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983." *Muhammad*, 2010 WL 1260425, at *3 (internal citations omitted.); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

Here, while Plaintiff indicates that he received a rules violation report, he does not allege that he was denied procedural due process in any disciplinary hearing. Nor does he assert that he suffered any deprivation of a protected liberty interest as a result, such as being punished by receiving a disciplinary violation "impos[ing] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Additionally, Plaintiff fails to specify how any of the above Defendants' statements were false. And, as explained above, mere allegations about Defendants making false statements would not state a constitutional claim. For these reasons, Plaintiff fails to state any due process claim.

### E.   ADA and Rehabilitation Act

Within his second claim, Plaintiff's reference to the ADA and Rehabilitation Act could liberally be construed to extend to his allegations that he was denied an "actual ADA toileting facility." (ECF No. 25, p. 6, 13).

The Court will analyze Plaintiff's "ADA and Rehabilitation Act claims together because the statutes provide identical remedies, procedures and rights." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (citation and internal quotation marks omitted). "Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entity" extends to state prisons and thus Title II applies to prisoners. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, (1998) ("State prisons fall squarely within the statutory definition of "public entity," which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'") (quoting 42 U.S.C. § 12131(1)(B)).

Under the regulations promulgated by Title II of the ADA, public entities must "operate each service, program, and activity so that the service, program or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(3) (2017). And "[a] public entity must make reasonable modifications to avoid discrimination against persons with disabilities, unless it can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity it provides." *Cohen v. City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014). Relevant here, courts have concluded that places of incarceration can be required to make modifications to restrooms so that they may be accessed by disabled persons. *Pierce v. Cty. of Orange*, 761 F. Supp. 2d 915, 956 (C.D. Cal. 2011) ("The dayroom's shower, bathroom, phone, and tables, the recreation area's toilet and sink, and the visiting area on the second floor of Module L must be made accessible in the same way as those areas in Module K. The County is not excused from making these physical modifications because of any hanging or suicide risks to mentally ill inmates in Module L."). However, "where reasonable alternative methods achieve compliance, structural changes to existing facilities need not be made." *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1219 (9th Cir. 2008).

To state a claim under Title II, a plaintiff must allege as follows:

(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotation marks

and citations omitted, alteration in original). And "[w]here the public entity in question is a prison, the plaintiff must also show that the conduct complained of was not reasonably related to a legitimate penological interest." *Munson v. California*, No. CIV S-09-0478 JAM, 2011 WL 284591, at *3 (E.D. Cal. Jan. 25, 2011), *report and recommendation adopted*, No. CIV S-09-0478 JAM, 2011 WL 1114448 (E.D. Cal. Mar. 28, 2011); *Armstrong v. Wilson*, 942 F. Supp. 1252, 1259 (N.D. Cal. 1996), *aff'd*, 124 F.3d 1019 (9th Cir. 1997) ("[T]he ADA must be applied in a prison environment with consideration of legitimate penological interests.").

Plaintiff briefly alleged he was denied an "ADA toilet" in his first amended complaint. In the Court's second screening order, the Court provided the applicable legal standards under the ADA, and gave Plaintiff leave to amend his complaint in part to explain whether he had "access to a toilet that accommodated his disability." (ECF No. 19, p. 10). In Plaintiff's second amended complaint, Plaintiff states that he can "utilize" the toilet but that the soap dispenser and hand wipes are out of his reach. (ECF No. 25, pp. 6-7). Plaintiff's allegations appear confined to the single bathroom he uses (or previously used) at his work assignment. Plaintiff fails to include any allegations concerning whether he had access to a different bathroom or sink that could accommodate his disability, or whether he still is required to use this one facility.

Moreover, as the Court previously advised Plaintiff in its second screening order, "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA," and thus there would be no individual liability for Plaintiff's ADA claims against the Defendants in this case. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Rather, "the proper defendant for a claim under Title II of the ADA is the public entity responsible for the alleged discrimination." *Pauley*, 2018 WL 5920780, at *2. Here, despite the Court's explanation in its previous screening order, Plaintiff has not sued any public entity that he deems responsible for his inability to cleanse his hands. Plaintiff's second amended complaint only names individual Defendants, who cannot be liable under the ADA.  Accordingly, Plaintiff fails to state a claim under the ADA or Rehabilitation Act.

### F.  First Amendment, Due Process in Connection with Property Deprivation, and Title VII

In his first and second claims, Plaintiff alleges, in pertinent part, that his rights under the First Amendment, Fourteenth Amendment, and Title VII were violated.[5] (ECF No. 25, p. 13). Plaintiff state that Suazo violated these rights by throwing away his "Jewish prayer," asserting that such conduct is anti-Semitic.[6] (*Id.* at 12).

Title VII prohibits employment discrimination because of a person's "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. To the extent Plaintiff is alleging in this claim that his work assignment constituted employment discrimination, Title VII does not apply where the prisoner's work is compelled by a prison mandate, as the prisoner is not considered an "employee" for purposes of Title VII. *See Castle v. Eurofresh, Inc.*, 731 F.3d 901, 907 (9th Cir. 2013). Here, as Plaintiff complaint acknowledges, he is being required to work pursuant to Cal. Code Regs. Tit. 15, § 3040(a), which requires every able-bodied inmate to work, and thus Title VII does not apply to him. (ECF No. 25, p. 13); *Addison v. California Inst. for Men*, No. EDCV151259JVSAJW, 2016 WL 8732476, at *8 (C.D. Cal. Nov. 1, 2016), *report and recommendation adopted*, 2016 WL 8738151 (C.D. Cal. Dec. 16, 2016) ("As discussed, because plaintiff's employment is the result of a mandate under California's requirement that all able–bodied prisoners perform labor, he is not an 'employee,' and Title VII does not apply to him.").

Regarding Plaintiff's allegation that Defendant Suazo threw away his "Jewish prayer," "prisoners retain the protections of the First Amendment," but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1997)). "To prevail on their Free Exercise claim, [a plaintiff] must allege facts plausibly showing that the government denied [him] 'a reasonable opportunity of pursuing [the prisoner's] faith comparable to the

---

[5] Plaintiff added these claims for the first time in his second amended complaint.
[6] Plaintiff also summarily alleges that his Eighth Amendment rights were violated, but the factual allegations, even liberally viewed, provide no basis to conclude that the Eighth Amendment's prohibition on cruel and unusual punishment is implicated here.

opportunity afforded fellow prisoners who adhere to conventional religious precepts."' *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). Here, Plaintiff's solitary allegation that Souza threw away his "Jewish prayer," without any explanation as to what a "Jewish prayer" is in this context, how this burdened his exercise of his religion, or any context as to Souza's actions. This allegation thus fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Although this is Plaintiff's second amended complaint and Plaintiff has been advised of the importance of providing sufficient facts to state a claim, in the abundance of caution, the Court recommends granting Plaintiff leave to amend only his claim that Suazo violated his First Amendment rights to freely exercise his religion by throwing away Plaintiff's "Jewish prayer." If Plaintiff is granted leave to file a third amended complaint to assert such a claim, and Plaintiff decides to amend the complaint to further allege this claim, Plaintiff should describe sufficient facts to determine what the "Jewish prayer" is that was thrown away, the circumstances behind Souza's actions, and how Plaintiff was denied a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners.

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. *See Hudson v. Palmer,* 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982)); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan,* 455 U.S. at 436; *Piatt v. McDougall,* 773 F.2d 1032, 1036 (9th Cir.1985); *see also Knudson v. City of Ellensburg,* 832 F.2d 1142, 1149 (9th Cir. 1987).  On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

Plaintiff's allegation that Suazo threw away his "Jewish prayer," with an accompanying allegation of anti-Semitism, implies an unauthorized intentional deprivation of property. However, "California law provides an adequate post-deprivation remedy in the form of tort claims against public officials." *Strauss v. Cty. of Los Angeles*, No. 19-CV-05277-GW (AFM), 2020 WL 8026143, at *9 (C.D. Cal. Oct. 7, 2020), *report and recommendation adopted*, No. 2:19-CV-05277-GW-AFM, 2021 WL 2808824 (C.D. Cal. July 2, 2021); *see also Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-95) (denying prisoner's due process claim regarding deprivation of property because he had adequate post-deprivation remedy under California law); *McFalls v. Alonzo*, No. 21-cv-849-MMA-RBB, 2021 WL 2577149, at *4 (S.D. Cal. June 23, 2021) ("The California Tort Claims Act ('CTCA') provides an adequate post-deprivation state remedy for the random and unauthorized taking of property.").

### G.  Cal. Code Regs. Tit. 15, § 3040(a) and United States Sentencing Guidelines

In his second and third claims, Plaintiff summarily alleges violations of a prison regulation, Cal. Code Regs. Tit. 15, § 3040(a), and a provision from the United States Sentencing Guidelines, § 3C1.1. (ECF No. 25, p. 13-14). Neither applies here.

As noted above, Cal. Code Regs. Tit. 15, § 3040(a) is the prison regulation mandating work by able-bodied inmates. However, the mere violation of a state prison regulation cannot support a § 1983 claim. *See Lovell By & Through Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."). Rather, even if Plaintiff were correct that he is not able-bodied so as to be required to work under this regulation, "[o]nly if the events complained of [also] rise to the level of a federal statutory or constitutional violation do they give rise to a claim under section 1983" and "[n]ot every violation of a state prison regulation

rises to the level of a constitutional violation." *Powell v. Banales*, No. 19-CV-06753-JST, 2019 WL 5626272, at *2 (N.D. Cal. Oct. 30, 2019) (collecting cases noting that violations of prison regulations do not *per se* equate to constitutional violations). Here, as noted in discussing Plaintiff's other claims, none of the allegations concerning his working conditions states a violation of a federal statute or the Constitution.

Under U.S.S.G. § 3C1.1, the offense level of a criminal defendant's sentencing guidelines may be increased for obstructing or impeding the administration of justice. However, Plaintiff fails to explain, and there is no rational basis to conclude, that a guideline concerning the sentencing of criminal defendants could create a cause of action in this civil suit. *Stone v. Van Wormer*, No. 3:19-CV-00144-HZ, 2019 WL 7194565, at *3 (D. Or. Dec. 26, 2019) ("Because Plaintiff fails to point to any private right of action for violating state sentencing guidelines, the Court may not grant relief on this ground.").

Accordingly, Plaintiff's allegations about Cal. Code Regs. Tit. 15, § 3040(a) and U.S.S.G § 3C1.1 being violated fail to state a claim.

### H.  Supervisor Liability

Lastly, the Court notes that Plaintiff states that Warden Fisher "relegates and delegates authority, assignments, and responsibilities to subordinates." (ECF No. 25, p. 10). Liberally construed, this allegation appears intended to assert a supervisory theory of liability against Warden Fisher.

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent

them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

Here, despite being advised of the above standards in the Court's second screening order, Plaintiff has failed allege any facts supporting a theory of supervisory liability for any claim as to Warden Fisher.

## IV.    CONCLUSION AND RECOMMENDATIONS

The Court concludes that Plaintiff's second amended complaint fails to state a claim. The Court recommends that all claims and defendants be dismissed with prejudice.

The Court recommends giving leave to amend solely as to Plaintiff's First Amendment claim against Defendant Suazo regarding the allegation that Defendant Suazo threw away his "Jewish prayer" in violation of Plaintiff's right to free exercise of his religion. In the Court's prior screening orders, the Court identified the same or very similar deficiencies in Plaintiff's prior complaints, provided Plaintiff with the relevant legal standards, and allowed Plaintiff to amend his complaints. Plaintiff filed his second amended complaint with the benefit of the Court's screening orders but failed to cure the deficiencies identified by the Court and further leave to amend would be futile as to all except the free-exercise claim. However, Plaintiff first asserted his free-exercise claim in his second amended complaint, and thus may have additional facts relevant to the legal standards for that claim.

Accordingly, the Court HEREBY RECOMMENDS that:

1.     All claims in Plaintiff's second amended complaint be dismissed for failure to state a claim; and

2.     Plaintiff be granted leave to amend only his claim that Defendant Suazo violated his First Amendment rights by throwing away his "Jewish prayer."

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff

may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**February 9, 2022**__          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE